UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE TORRES,<br><br>　　　　Plaintiff,<br><br>-against-<br><br>WAGNER COLLEGE and FRANK CAFASSO,<br><br>　　　　Defendants. | Index No.:<br><br>**COMPLAINT**<br>**Jury Trial Demanded** |

Plaintiff JOSE TORRES ("Plaintiff"), by and through his attorneys, FISHER TAUBENFELD LLP, alleges against Defendants WAGNER COLLEGE (the "College" or the "Organization") and FRANK CAFASSO ("Defendant Cafasso" or "Individual Defendant") as follows:

## NATURE OF THE ACTION

1. This action arises and Plaintiff seeks damages under Section 1981 of the Civil Rights Act, 42 USC §1981 ("Section 1981"), New York State Human Rights Law, NY Exec Law § 296 et. seq (2015) ("State Law"), and the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law").

2. Plaintiff brings this action to challenge Defendants' discrimination in the terms and conditions of Plaintiff's employment based on his race in violation of Section 1981, State Law, and City Law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to Section 1981 and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the state and

city law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

5. Pursuant to §8-502(c) of the New York City Human Rights Law, within ten days of the filing this Complaint with the Court, Plaintiff will serve a copy of this Complaint on the New York City Commission on Human Rights and on the Corporation Counsel for the City of New York.

## PARTIES

### *Plaintiff*

6. Plaintiff is a New York resident.

7. Plaintiff was at all times an "employee" within the meaning of State Law, protected from discrimination on the basis of race.

8. Plaintiff was at all times a "person" within the meaning of City Law, protected from discrimination on the basis of race.

### *Defendants*

9. The Organization is a college based in Staten Island, New York.

10. Upon information and belief, the Organization is a nonprofit organized and existing under the laws of the State of New York and maintains its principal place of business at1 Campus Rd, Staten Island, NY, 10301.

11. At all relevant times, the Organization has continuously been doing business in the State of New York and the City of New York and has continuously employed more than four (4) people, and accordingly is an "employer" within the definitions of State Law and City Law.

12. Defendant Cafasso was the Chief Information Officer employed by Wagner College, and at all relevant times held supervisory authority over Plaintiff by, inter alia, setting Plaintiff's schedule, assigning tasks to Plaintiff, and taking unwarranted disciplinary action against Plaintiff. Defendant Cafasso was Plaintiff's employer.

## FACTUAL ALLEGATIONS

13. At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that Defendants have been violating federal and state law and that Plaintiff has been and continues to be injured.

### *Discrimination Against Plaintiff*

14. Plaintiff has worked for Wagner College for 18 years as a network manager in the Information Technologies department.

15. Plaintiff is the only Hispanic person in the Network Operations group, which is otherwise entirely white, and he is one of only two Hispanic workers in the entire IT department.

16. Throughout Plaintiff's employment, he has been subjected to intolerable discrimination based on his race and national origin, amounting to a hostile work environment.

17. Defendants' unlawful acts constitute a continuous practice and policy of discrimination spanning the entirety of Plaintiff's employment.

18. Defendants' discrimination against Plaintiff has taken many forms, including verbal harassment, physical assault, and repeated failure to promote.

19. Despite being qualified and certified for a more advanced position, Plaintiff's applications for more senior roles have been consistently denied.

20. So far, Plaintiff has applied unsuccessfully four times for more senior internal roles. Each time, the College made him responsible for the open roles in an interim capacity until it hired someone else permanently. This has often taken up to six months. Plaintiff was qualified for all these roles and satisfactorily performed the job duties for these roles.

21. Invariably, these roles were permanently filled by white workers.

22. Most recently, Plaintiff was denied a promotion in December 2022.

23. On numerous occasions, coworkers and supervisors have called Plaintiff racial slurs, such as "spic," "wetback," and "beaner," including Defendant Cafasso calling Plaintiff "spic" by Slack message in August 2021. See **Exhibit A:**



24. Three years into Plaintiff's employment, he was required to attend a racist "confederacy" themed work party at the home of adjunct professor Blaze Vanderhougel. (See **Exhibit B** below, a photo taken at this party.) When he resisted attending, his coworkers told him that he "had to show up" because they would "make [his] life a living hell" if he didn't. He was

required to go to the event dressed as a slave and was forced to purchase the costume with his own money. The costume included a false ball and chain on his ankle.



25.     In October 2012, Steve Corn, a programmer in the IT department, put Plaintiff into a chokehold twice. When Plaintiff reported this physical assault to the CIO, Frank Cafasso, Cafasso stated that he "spoke with" Corn and that "it won't happen again." However, there was a third incident with Corn after this conversation, in which Corn raised his voice and threatened Plaintiff with physical abuse in the lunch room in front of coworkers and Cafasso.

26.     Corn also disparagingly called Plaintiff "beaner" and "Mexican." Plaintiff is of Puerto Rican descent.

27.     In October 2015, Help Desk Manager Paul Lui hooked Plaintiff from behind

5

between his legs with a wooden cane, causing a massive amount of pain to Plaintiff's groin. A picture of the cane is below as **Exhibit C**. Lui commented: "oh, you like this?" Plaintiff reported this assault to HR. However, nothing was done, and one week later Lui was promoted to Director of the Help Desk.



28. Plaintiff contacted John Carrescia, the College's CFO and Vice President for Finance & Administration, to complain about Lui's assault and the harassment he was experiencing from Defendant Cafasso and his coworkers. Mr. Carrescia replied that he would follow up, but Plaintiff continued to experience racist harassment from his manager and team.

29. In or around 2016, Lui gifted Plaintiff a printed image stating: "I Want You Gringo." See **Exhibit D**:



30. About one and a half years ago, shortly after Lui's retirement, Lui came to visit the office. During this visit, Lui degraded Plaintiff, cursing at him and saying he was "a dumb ass Spanish" and that Plaintiff didn't know what he was talking about. Plaintiff informed CIO Joseph Spina about this incident.

31. Around the same time, Defendant Cafasso gave Plaintiff a board game called "Puerto Rico" as a Christmas gift, which was purchased with contributions from all of

7

Plaintiff's coworkers. This game was about the Spanish colonization of Puerto Rico. Part of the game was trading goods represented by game pieces, including a brown piece representing coffee. When playing the game, Plaintiff's coworkers referred to the brown piece as "Jose," and acted as if they were trading Plaintiff as a slave in the game.

32.     Cafasso and Lui forced Plaintiff to display the board game on his desk until Cafasso left the College. See an image of the game on Plaintiff's desk, included below as **Exhibit E**. Plaintiff complained to HR about the game, but nothing was done.



33.     In January 2018, Plaintiff noticed that several cameras had been added to the office and were pointed directly at his desk. He spoke with Johnny Chin, the employee who placed the cameras in the office, and with Cafasso about his discomfort with these cameras and the feeling that he was being surveilled. Chin removed one of the cameras initially but then Plaintiff discovered that it had only been placed in a new location, still pointed at Plaintiff's desk. Plaintiff complained to HR, including photographs of the cameras and their placement. Upon information and belief, other employees were not being surveilled in the same manner.

34.     Plaintiff has been subjected to a continuous pattern of racism beginning at

8

the commencement of his employment.

### *Retaliation Against Plaintiff*

35. Defendants retaliated against Plaintiff for complaining about discrimination by failing to promote him or give him raises on a schedule consistent with his colleagues.

36. Shortly after Paul Lui assaulted Plaintiff and Plaintiff complained, he and Lui were both under consideration for the Help Desk Director position. Lui received the promotion instead of Plaintiff, despite Plaintiff being equally qualified.

37. Throughout his employment, Plaintiff applied to all open director positions and was consistently denied. He applied for Director of Infrastructure in or around 2021, but was denied, even though he had been trained for 15 years to do the job by the former director, who told him: "You can do this job."

38. Plaintiff applied for a promotion three times while Defendant Cafasso was CIO. Each time, Plaintiff was denied.

39. When Plaintiff asked why he was not promoted, Defendant Cafasso told him: "John said no," referring to John Carrescia.

40. Plaintiff tried again to be promoted twice after Defendant Cafasso left the College, but again the current CIO told him that "John said no."

41. Plaintiff made $62,000 per year consistently for five years while observing other employees getting regular raises. Plaintiff was aware of a white employee with a lower-ranking job title making $70,000.

42. Plaintiff's coworkers, including Paul Lui and Anthony Spina, received wage increases of up to $10,000 per year. When Plaintiff did receive raises, they would be in much lower amounts of $1,000 or $2,000.

9

43. Plaintiff was most recently denied a promotion in December 2022.

44. A retiring employee told Plaintiff about his failure to be promoted: "It's got to be your color and because you stood up."

## FIRST CAUSE OF ACTION
### (Race and National Origin Discrimination in Violation of Section 1981)

45. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

46. Defendants willfully violated federal law when they subjected Plaintiff to discrimination in the terms and conditions of his employment on the basis of race and national origin.

47. As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

48. As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## SECOND CAUSE OF ACTION
### (Discrimination in Violation of State Law)

49. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

50. Defendants willfully violated State Law when they subjected Plaintiff to discrimination in the terms and conditions of his employment on the basis of his race and national origin.

51. As a proximate result of the Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

52. As a proximate result of the Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of City Law)

53. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

54. Defendants willfully violated City Law when they subjected Plaintiff to discrimination in the terms and conditions of his employment on the basis of race and national origin.

55. As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

56. As a proximate result of the Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

### FOURTH CAUSE OF ACTION
### (Retaliation in Violation of State Law)

57. Plaintiff repeats and realleges all paragraphs above as though fully set forth

herein.

58. Defendants willfully violated State Law when they retaliated against Plaintiff in the terms and conditions of his employment for complaining about discrimination.

59. As a proximate result of the Defendants' unlawful acts of retaliation, Plaintiff has endured emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

60. As a proximate result of the Defendants' unlawful acts of retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of City Law)

61. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

62. Defendants willfully violated City Law when they retaliated against Plaintiff in the terms and conditions of his employment for complaining about discrimination.

63. As a proximate result of the Defendants' unlawful acts of retaliation, Plaintiff has endured emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

64. As a proximate result of the Defendants' unlawful acts of retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment awarding:

A. Compensatory Damages in an amount to be determined at trial;

B. Prejudgment Interest;

D. Back Pay, Front Pay, and damages for all employment benefits Plaintiffs would have received but for the discriminatory and retaliatory acts and practices of Defendants;

E. Compensatory, punitive, mental anguish, pain and suffering damages sustained as a result of Defendants' discriminatory and retaliatory conduct; and

F. Plaintiffs' costs and reasonable attorneys' fees.

## JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated: April 29, 2024

                                                                  Respectfully submitted,

By: _____
Liane Fisher, Esq.
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
*Attorneys for Plaintiff*